1   BRIAN J. MOONEY (SBN: 143795)
    bmooney@gordonrees.com
2   EDWARD FITZGERALD (SBN: 227218)
    efitzgerald@gordonrees.com
3   GORDON & REES LLP
    275 Battery Street, Suite 2000
4   San Francisco, CA 94111
    Telephone: (415) 986-5900
5   Facsimile: (415) 986-8054
6
7   Attorneys for Defendant
    ABBOTT LABORATORIES INC. and
8   ABBOTT LABORATORIES
9
                UNITED STATES DISTRICT COURT
10
              CENTRAL DISTRICT OF CALIFORNIA
11
12
13  SHIMRIT VAVAK, individually and        U.S.D.C. Case No. SACV10-1995 JVS(RZ)
    on behalf of all others similarly
14  situated,                              Case No. 30-2010-00426492-CU-BT-CXC
                                           (Orange County Superior Court)
15                  Plaintiff,
                                           NOTICE OF REMOVAL
16
17          v.
18                                         Date Filed in State Court: November 18,
    ABBOTT LABORATORIES, INC.              2010
19  d/b/a ABBOTT SALES,
    MARKETING and DISTRIBUTION
20  CO., a Delaware corporation, and
    ABBOTT LABORATORIES d/b/a
21  ABBOTT NUTRITION, an Illinois
    corporation,
22
23          Defendants.
24
25
26
27
28
                                                      NOTICE OF REMOVAL

**TO THE JUDGES FOR THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA:**

PLEASE TAKE NOTICE that Abbott Laboratories, Inc. and Abbott Laboratories (collectively "Abbott" or "Defendants"), the only defendants in the above-titled action, hereby remove this action pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 from the Superior Court for the State of California for the County of Orange to the United States District Court for the Central District of California. The grounds for removal are set forth below.

1. On November 18, 2010, Plaintiff Shimrit Vavak ("Vavak") commenced this action by filing a Summons and Class Action Complaint in the Superior Court for the State of California for the County of Orange captioned *Shimrit Vavak, individually and on behalf of all others similarly situated, v. Abbott Laboratories, Inc. d/b/a Abbott Sales, Marketing and Distribution Co., a Delaware corporation, and Abbott Laboratories d/b/a Abbott Nutrition, an Illinois Corporation,* Case No. 30-2010-00426492-CU-BT-CXC.

2. Defendants were served on December 2, 2010 by process server through an agent located at 818 West Seventh Street, Los Angeles, California.

3. A true and correct copy of the Summons and Complaint is attached hereto as **Exhibit A.** There are no other pleadings or other case documents at this time.

4. This Notice of Removal is timely because it is filed within thirty days of service on the defendant of the Summons and Complaint. *See* 28 U.S.C. § 1446(b).

5. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being contemporaneously filed with the Clerk of the Superior Court for the State of California for the County of Orange and served upon plaintiff.

1

1

**PLAINTIFF'S COMPLAINT**

2

6.    Vavak alleges that she is a citizen of California.  (Compl. ¶ 4).

3

7.    Defendant Abbott Laboratories, Inc., which does business as Abbott

4

Sales, Marketing, and Distribution Co., is a Delaware corporation with its

5

headquarters and principal place of business in Illinois.  (Compl. ¶ 5).

6

8.    Defendant Abbott Laboratories, which does business as Abbott

7

Nutrition, is an Illinois corporation with its headquarters and principal place of

8

business in Illinois.  (Compl. ¶ 6).

9

9.    Vavak's claims involve Defendants' formulation, design,

10

manufacturing, marketing, advertising, distribution, and sale of various Similac-

11

brand infant formula products which Abbott recalled in September 2010.  (Compl.

12

¶¶ 1, 15-16).

13

10.    Vavak alleges that the recalled products were defective in that they

14

"contained beetles and beetle larvae, which if consumed by infant children, could

15

lead to serious health concerns . . . ."  (Compl. ¶ 1).

16

11.    Vavak alleges that she was exposed to Defendants' promotion,

17

advertising, and marketing of Similac and therefore believed that Similac products

18

were safe for consumption by her child.  (Compl. ¶ 38).

19

12.    Vavak alleges that her child was sickened as a result of consuming

20

defective Similac.  (Compl. ¶ 41).

21

13.    Accordingly, Vavak alleges that Defendants' marketing and

22

advertisement of Similac was "deceptive."  (Compl. ¶ 39).

23

14.    Vavak asserts claims sounding in common-law negligence (Count I);

24

misrepresentation (Count II); negligent misrepresentation (Count III); breach of

25

express warranty (Count IV); breach of implied warranty of merchantability (Count

26

V); and breach of contract (Count VI) or, in the alternative, unjust enrichment

27

28

2

NOTICE OF REMOVAL

(Count VII). She also asserts a claim under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 (Count VIII). (Compl. ¶¶ 50-94).

15. Vavak seeks a money judgment against Defendants "for all damages caused by their conduct" (Compl. Prayer for Relief ¶ C); "the reasonable value of medical monitoring for [the] infant children" of Vavak and the putative class (Compl. ¶ 34); disgorgement of "the revenues [Defendants] received for the sale of defective Similac products" (Compl. ¶ 86); restitution of all "monies charged to Plaintiff and the putative Classes for the recalled Similac products" (Compl. ¶ 45(d), Prayer for Relief ¶ D); "attorneys' fees" (Compl. Prayer for Relief ¶ E); and an injunction "to prevent [Defendants' allegedly unfair] conduct in the future" (Compl. ¶ 94; Prayer for Relief ¶ G).

16. Vavak's Complaint does not state an amount in controversy.

17. Vavak seeks to litigate his claims on behalf of herself and proposed classes as follows:

> **The Class:** All persons in the United States who purchased Similac infant formula that is subject to Abbott's Similac recall of September 22, 2010. Excluded from the Class are 1) any Judge or Magistrate presiding over this action and members of their families; 2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current or former employees, officers and directors; 3) persons who properly execute and file a timely request for exclusion from the class; and 4) the legal representatives, successors or assigns of any such excluded persons.

> **The SubClass:** All California citizens who purchased Similac infant formula that is subject to Abbott's Similac recall of September 22, 2010. Excluded from the Class [sic] are 1) any Judge or Magistrate presiding over this action and members of their families; 2) Defendants, Defendants' subsidiaries, parents, successors,

3

NOTICE OF REMOVAL

predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current or former employees, officers and directors; 3) persons who properly execute and file a timely request for exclusion from the class; and 4) the legal representatives, successors or assigns of any such excluded persons.

(Compl. ¶ 42).

18.     As explained below, this Court has jurisdiction over Vavak's action and it is properly removed to this Court.

## BASIS OF FEDERAL JURISDICTION UNDER
## CLASS ACTION FAIRNESS ACT

19.     This action is removable to this Court because federal diversity jurisdiction, 28 U.S.C. § 1332, exists over Vavak's claims pursuant to the Class Action Fairness Act of 2005, Pub L. 109-2, 119 Stat. 4 (2005) ("CAFA"), codified in various sections of Title 28 of the United States Code including 28 U.S.C. §§ 1332(d) & 1453.

20.     CAFA became effective on February 18, 2005, and applies to any civil action on or after that date. CAFA applies to this action because it was commenced on October 1, 2010.

21.     Congress enacted CAFA to enlarge federal jurisdiction over proposed class actions. CAFA provides that a class action against a non-governmental entity may be removed to federal court if: (a) the number of proposed class members is not less than 100; (b) any member of the proposed class is a citizen of a state different from any defendant; and (c) the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs. *See* 28 U.S.C. §§ 1332(d)(2), 1332(d)(5) & 1453(b). As set forth below, all of the requirements for removal are satisfied.

### Class Size

22.     CAFA's first requirement, that the proposed class contain at least 100 members, 28 U.S.C. § 1332 (d)(5), is satisfied.

4

23.     Vavak's proposed classes contain "[a]ll persons in the United States who purchased Similac infant formula that is subject to Abbott's Similac recall of September 22, 2010." (Compl. ¶ 42).

24.     Vavak alleges that "[t]he Defendants have over one million customers who purchased their recalled Similac products." (Compl. ¶ 44).

25.     Furthermore, Vavak alleges that "the recall encompasses . . . in excess of five million tubs." (Compl. ¶ 20). It follows as a necessary inference that the five million tubs that were allegedly recalled were collectively purchased by no fewer than 100 people.

26.     Vavak's proposed class therefore contains at least 100 members.

**Minimal Diversity of Citizenship**

27.     CAFA's second requirement, that any one member of the proposed class be a citizen of a state different from any defendant, 28 U.S.C. § 1332(d)(2), is satisfied.

28.     Vavak alleges that she is a citizen of California. (Compl. ¶ 4).

29.     Vavak alleges that Abbott Laboratories, Inc. (d/b/a Abbott Sales, Marketing and Distribution Co.) is a Delaware corporation and that its headquarters and principal place of business is in Illinois. (Compl. ¶ 5). Abbott Laboratories, Inc. is therefore a citizen of Delaware and Illinois.

30.     Vavak alleges that Abbott Laboratories (d/b/a Abbott Nutrition) is an Illinois corporation and that its headquarters and principal place of business is in Illinois. (Compl. ¶ 6). Abbott Laboratories is therefore a citizen of Illinois.

31.     Diversity of citizenship therefore exists between at least one proposed class member and any defendant, satisfying 28 U.S.C. § 1332(d)(2).

32.     The complete diversity of citizenship between Vavak and Defendants not only satisfies CAFA's minimal diversity-of-citizenship requirement, but also

NOTICE OF REMOVAL

1    precludes application of the "local controversy" or "home state" exceptions of 28

2    U.S.C. §§ 1332(d)(3) and (d)(4).

3                              **Amount in Controversy**

4          33.   CAFA's third requirement, that the aggregate amount in controversy

5    exceed $5 million exclusive of interest and costs, 28 U.S.C. § 1332(d)(2), is

6    satisfied.  Although Defendants dispute liability and damages, Vavak's claims for

7    relief on behalf of herself and her proposed classes, if granted, would exceed $5

8    million.  *See Abrego Abrego v. Dow Chem. Co.*, 443 F. 3d 676, 683 (9th Cir. 2006)

9    ("Where the complaint does not specify the amount of damages sought, the

10   removing defendant must prove by a preponderance of the evidence that the amount

11   in controversy requirement has been met.").

12         34.   Vavak seeks disgorgement/restitution, compensatory damages, the

13   costs of future medical monitoring, attorney's fees, and injunctive relief.  (Compl.

14   ¶¶ 34, 86, Prayer for Relief C-G).

15         35.   Vavak seeks restitution of all "monies charged to Plaintiff and the

16   Putative Classes for the recalled Similac products" (Compl. ¶ 45(d)), as well as the

17   return of all "revenues [Defendants] received for the sale of defective Similac

18   products" (Compl. ¶ 86).

19         36.   Vavak equates the "defective" products with the over "five million

20   tubs" of Similac that were recalled (Compl. ¶ 20).  *See* Compl. ¶¶ 15, 18, 28, 36.

21         37.   This Court may take judicial notice of the fact that a tub of Similac-

22   brand infant formula costs *well* over one dollar, and may fairly infer that this was

23   also true during the time period encompassed by the recall.  *See, e.g.*, http://babies-

24   kids.pricegrabber.com/baby-bottle-feeding-formula/similac/p/1003/form_keyword=

25   similac/st=sort/sortby=priceA (last visited December 22, 2010) (showing 106

26   Similac-brand formula products available from retailers such as Walgreens, K-Mart,

27   and Walmart, ranging in price from $4.99 to $190.47).

28

                                                          NOTICE OF REMOVAL

38.     All "monies charged to Plaintiff and the Putative Classes for the [over five million] recalled [tubs of] Similac" thus constitutes an amount far in excess of $5 million.

39.     Therefore, CAFA's aggregate amount-in-controversy requirement is met without even considering any of Vavak's requested relief other than restitution.

40.     With respect to compensatory damages, Vavak alleges that consumption of beetles in Similac formula "could lead to serious health concerns, including gastrointestinal problems, diarrhea and vomiting, and severe weight loss." (Compl. ¶ 1).

41.     Vavak alleges that multiple "thousands" of children "w[ere] sickened as a result" of consuming defective Similac.  (Compl. ¶ 41).

42.     Assuming very conservatively that each "sickened" child and/or her parent were entitled, on average, to $100 in damages (including out-of-pocket medical expenses and damages for pain and suffering), and that "thousands" means only *two* thousand – the lowest possible number that could still qualify as "thousands" (plural) – the resultant amount of compensatory damages would add an additional $200,000 to the amount in controversy.

43.     However, given Vavak's allegation that "over one million customers . . . purchased the[] recalled Similac products," and the assumption that only one percent of children who consumed these products were "sickened," the number of "sickened" children would be *ten* thousand.  In that case, if each "sickened" child's and/or her parent's average recovery exceeded $500, the jurisdictional threshold would be reached based on compensatory damages alone.

44.     Vavak's requested medical-monitoring relief, if awarded, would add significant further sums to the amount in controversy.  If each of the alleged "one million" purchasers of recalled Similac were awarded, on average, more than $5 in future medical-monitoring expenses for the "early detection" of "gastrointestinal

7

NOTICE OF REMOVAL

1  and other health related problems due to the consumption of Similac" (Compl. ¶ 34),

2  the jurisdictional threshold would be surpassed based on this relief alone.

3      45.    Vavak's requested injunctive relief, if awarded, would add significant

4  further sums to the amount-in-controversy in terms of Defendants' cost of

5  compliance. *See Int'l Padi, Inc. v. Diverlink*, Nos. 03-56478, 03-56788, 2005 WL

6  1634347, at *1 (9th Cir. July 13, 2005) ("[I]n determining the amount in

7  controversy, we may also include the value of the requested injunctive relief to

8  either party.").

9      46.    Vavak's request for attorney's fees, if awarded, would also add

10  significant further sums to the amount in controversy. *See Guglielmino v. McKee*

11  *Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007).

12      47.    Therefore, preponderance of the evidence establishes that Vavak has

13  alleged a class-wide aggregate amount in controversy that easily exceeds $5 million.

14      48.    For all of the foregoing reasons, this action is properly removed to this

15  Court.

16      WHEREFORE, Abbott Laboratories, Inc. and Abbott Laboratories, the only

17  defendants in the above-titled action, respectfully remove this action from the

18  Superior Court for the State of California for the County of Orange (Case No. Case

19  No. 30-2010-00426492-CU-BT-CXC), to this Court pursuant to 28 U.S.C. §§ 1332,

20  1441, and 1446.

21

22  Dated:      December 30, 2010      GORDON & REES LLP

23

24                        By: *Edward R. Fitzgerald*

25                          Edward R. Fitzgerald

26                        Attorneys for Defendants

27                        Abbott Laboratories, Inc. and Abbott
                        Laboratories

28

NOTICE OF REMOVAL

# EXHIBIT A

# EXHIBIT A

12/2/10   10:05AM

SUM-100

# SUMMONS
## (CITACIÓN JUDICIAL)

| | FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE) |

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
ABBOTT LABORATORIES, INC. d/b/a ABBOTT SALES, MARKETING and
DISTRIBUTION CO., a Delaware corporation, and
ABBOTT LABORATORIES d/b/a ABBOTT NUTRITION, an Illinois corporation.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

SHIMRIT VAVAK, individually and on behalf of all others similarly
situated

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**11/18/2010** at 10:27:47 AM

Clerk of the Superior Court
By Jaime Cordero, Deputy Clerk

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | **CASE NUMBER:**
*(Número del Caso):* |
| The name and address of the court is:
*(El nombre y dirección de la corte es):* Superior Court of California,
County of Orange, Civil Complex Center | 30-2010-00426492-CU-BT-CXC |

751 W. Santa Ana Blvd., Santa Ana, CA 92701          Judge Gail A. Andler

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

David C. Parisi; 15233 Valleyheart Drive, Sherman Oaks, California 91403; (818) 990-1299

| DATE: November 18, 2010   ALAN CARLSON, Clerk of the Court | Clerk, by *Jaime Cordero* | , Deputy |
| *(Fecha)* | *(Secretario)* | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).* Jaime Cordero

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☑ on behalf of *(specify):* Abbott Laboratories dba Abbott
   under: ☑ CCP 416.10 (corporation) + d/M d/nbdn 3005 cv 000032
          ☐ CCP 416.20 (defunct corporation)          ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

| | Page 1 of 1 |
| Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 (Rev. July 1, 2009) | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov |

David C. Parisi, Esq. (162248)
Suzanne Havens Beckman, Esq. (188814)
Azita Moradmand, Esq. (260271)
dcparisi@parisihavens.com
shavens@parisihavens.com
amoradmand@parisihavens.com
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
Telephone: (818) 990-1299
Facsimile: (818) 501-7852

*Attorneys for Plaintiff*

ELECTRONICALLY FILED
Superior Court of California,
County of Orange
11/18/2010 at 10:27:47 AM
Clerk of the Superior Court
By Jaime Cordero, Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### FOR THE COUNTY OF ORANGE

Judge Gail A. Andler

SHIMRIT VAVAK, individually and on
behalf of all others similarly situated,

    Plaintiff,

v.

ABBOTT LABORATORIES, INC. d/b/a
ABBOTT SALES, MARKETING and
DISTRIBUTION CO., a Delaware
corporation, and ABBOTT
LABORATORIES d/b/a ABBOTT
NUTRITION, an Illinois corporation,

    Defendants.

Case No. 30-2010-00426492-CU-BT-CXC

**CLASS ACTION COMPLAINT FOR:**

1) Negligence;
2) Misrepresentation;
3) Negligent Misrepresentation;
4) Breach of Express Warranty;
5) Breach of Implied Warranty of
   Merchantability;
6) Breach of Contract;
7) Unjust Enrichment *in the alternative*;
   and,
8) Violation of Cal. Bus. & Prof.
   Code § 17200, et seq.

**DEMAND FOR JURY TRIAL**

1   Plaintiff Shimrit Vavak ("Plaintiff" or "Vavak"), by and through her counsel Parisi &

2   Havens LLP, brings this Class Action Complaint against Defendants Abbott Laboratories,

3   Inc., and Abbott Laboratories (collectively referred to as "Abbott or "Defendants"), on her

4   own behalf and on behalf of a class of similarly situated individuals who purchased Abbott's

5   Similac-brand infant formulas. Plaintiff, for her Class Action Complaint, alleges as follows

6   upon personal knowledge as to herself and her own acts and experiences, and, as to all other

7   matters, upon information and belief, including investigation conducted by her attorneys.

### Introduction

8

9   1.   This case involves Defendants' formulation, design, manufacturing,

10   marketing, advertising, distributing, and selling of various defective Similac-brand infant

11   powder formulas. On September 16, 2010, Defendants discovered that certain Similac-

12   brand formulas had been contaminated and contained beetles and beetle larvae, which if

13   consumed by infant children, could lead to serious health concerns, including

14   gastrointestinal problems, diarrhea and vomiting, and severe weight loss.

15   2.   Despite a long history of recalls of their infant formulas and knowledge that

16   Similac is widely used by individual consumers and medical institutions throughout the

17   United States, Defendants waited—at a minimum—nearly an entire week before informing

18   the public of the contamination and attendant health risks.

19   3.   Through their conduct alleged herein, Defendants caused injury to Plaintiff

20   and the putative Classes she seeks to represent. Plaintiff now brings this Complaint to

21   obtain relief for those injuries and to ensure that Defendants' conduct does not threaten the

22   health of her child or other infant children in the future.

### Parties

23

24   4.   Plaintiff Vavak is a natural person and citizen of the State of California.

25   5.   Defendant Abbott Laboratories, Inc. is a corporation organized and existing

26   under the laws of the State of Delaware. Abbott Laboratories maintains its United States

27   headquarters and principal place of business at 100 Abbott Park Road, Abbott Park, Illinois

28   60064-3500.

6.     Defendant Abbott Nutrition is a corporation organized and existing under the laws of the state of Illinois.  Abbott Nutrition maintains its United States headquarters and principal place of business at 100 Abbott Park Road, Abbott Park, Illinois 60064-3500.

### Jurisdiction and Venue

7.     This Court has jurisdiction over the causes of action asserted herein pursuant to the California Constitution, Article VI, §10, because this case is a cause not given by statute to other trial courts.

8.     This Court has jurisdiction over Defendants pursuant to California Code of Civil Procedure § 410.10 because they conduct substantial business in the State of California and/or many of Defendants' wrongful acts directly affect California residents like Plaintiff Vavak.

9.     Venue is proper in this Court because Plaintiff resides in Orange County. Venue is also proper because Defendants conduct substantial business activities throughout this county.

### General Allegations Common to All Counts

10.     Abbott is one of the world's largest health care and pharmaceutical companies.  Abbott is in the business of formulating, designing, manufacturing, marketing, advertising, distributing, and selling of, *inter alia*, various infant powder formulas including those packaged in rectangular plastic tubs.  One of the infant powder formula product lines formulated, designed, manufactured, marketed, advertised, distributed and sold by Abbott is the infant formula known as Similac.

11.     Similac is one of the nation's best-selling powdered formulas for infants, and is the most widely-used infant formula in hospitals across the United States.  Similac branded products are sold in grocery stores and pharmacies throughout the United States, including in California.

12.    Defendants market Similac products to parents as a product that "Moms can count on for trusted nutrition and the formula that's right for their babies."[1]

13.    Similac products are often recommended for consumption by premature or developmentally disabled infant children. Indeed, the packaging of Similac products promotes their use to build "immune support," "strong bones" and "brain and eyes." In addition, Defendants' marketing materials claim that "[e]ach of the formulas in our line provides the balance of protein, minerals, and other nutrients that helps give babies a strong start in life. A baby's first year is so important, so count on Similac for nutrition you can trust."

14.    Similac's packaging represents that it is safe for consumption by infants.

**The Recall**

15.    On or about September 22, 2010, Abbott announced that consumers should immediately stop using Similac powder products because they were believed to contain pieces of beetles or beetle larvae.

16.    According to Abbott's announcement:

> Abbott is recalling these products following an internal quality review, which detected the remote possibility of the presence of a small common beetle in the product produced in one production area in a single manufacturing facility. The United States Food and Drug Administration (FDA) has determined that while the formula containing these beetles poses no immediate health risk, there is a possibility that infants who consume formula containing the beetles or their larvae could experience symptoms of gastrointestinal discomfort and refusal to eat as a result of small insect parts irritating the GI tract. If these symptoms persist for more than a few days, a physician should be consulted.

17.    According to its own accounts, Abbott first became aware of the contamination of its products on September 16, 2010. Indeed, a letter written to Abbott by the Senate Health, Education, Labor and Pensions Committee Chairman, Senator Tom Harkin, indicated that "Abbott detected the insect contamination on September 16, 2010."

---

[1]    *Available at* http://e-mediaroom.com/similac_data/downloads/media/14_Similac %20Brand%20Fact%20Sheet%20FINAL%2005-04-10.pdf?sl=similac_data.

Parisi & Havens LLP
15233 Valleyheart Drive
SHERMAN OAKS, CA 91403
(818) 990-1299

18.     Nevertheless, despite detecting the contaminated infant formula Abbott delayed—at a minimum—almost an entire week before it recalled the defective products on or about September 22, 2010.

19.     Abbott's eventual recall encompasses all Similac powdered formula sold in rectangular tubs, including:

Certain Similac powder product lines offered in plastic containers.

Certain Similac powder product lines offered in sizes such as 8-ounce, 12.4 ounce and 12.9-ounce cans.

The complete list of Defendants' recalled products at issue spans more than 37 typed-pages. (*See* "Abbott Voluntarily Recalls Certain Similac Products," a true and accurate copy of which is attached hereto as Exhibit A.)

20.     On information and belief, the recall encompasses more than 2000 lot numbers, and in excess of five million tubs.

### Defendants' Past Problems with Infant Formula

21.     Abbott is no stranger to recalls of its infant formulas.

22.     In February 2005, Abbott issued a recall of its Similac Advance baby formula after plastic particles were discovered in products that had been distributed months earlier, between September and October 2004.

23.     Later, in September 2006, Abbott recalled hundreds of thousands of containers of Similac liquid formula.  The recall was related to defects in the formula's packaging that led to decreased levels of vitamin C, which resulted in various medical problems for infants who consumed the products, including vitamin C deficiencies, irritability and general tenderness.

24.     In May 2007, Abbott recalled its Similac Special Care Ready-to-Feed Premature Infant Formula with Iron, as a result of lower than advertised iron levels contained in the products.  Consumption of the recalled products put premature infants at an increased risk of developing anemia.  The recall came months after the products were first distributed in November 2006.

Panish & Havens LLP
11333 Wilshire Blvd
INGRAHAM CAKE, CA 91403
(858) 888-1298

25.  In May 2008, Abbott recalled multiple lots of its Calcilo XD infant formula as a result of the products' unintended oxidation.  Consumption of the highly oxidized products could lead to gastrointestinal problems in infants, including nausea, vomiting, and diarrhea.  The products were not recalled until nearly two years after distribution began in the United States and internationally.

**Abbott's Wrongful Conduct at Issue Here**

26.  In this case, Abbott negligently formulated, designed, manufactured, marketed, advertised, promoted, distributed and/or sold Similac products that can cause serious health problems including, but not limited to, diarrhea, gastrointestinal discomfort and vomiting.

27.  Abbott failed to properly exert quality control measures to ensure that the infant formulas were safe for consumption, did not cause adverse health effects, and did not contain beetle parts and beetle larvae.

28.  Upon detecting that its Similac products contained beetle parts and beetle larvae on September 16, 2010, Abbott waited approximately one week before disclosing to the public the fact that its Similac products were unsafe for consumption, and issuing the recall of those products.

29.  Plaintiff relied upon the misrepresentations made by Defendants about the quality and health benefits of their Similac products in marketing materials and advertising campaigns.  Plaintiff reasonably believed in the quality and safety of Similac products, and that Similac products would not adversely affect her infant child's health.  Defendants misled Plaintiff into purchasing the unsafe Similac products, which did not provide the attributes and benefits Plaintiff reasonably sought and expected to receive.

30.  As a result of Defendants' acts and practices detailed herein, Plaintiff purchased Similac products that were not safe for consumption by her infant child.  Prior to their sale, these defective products were in Abbott's exclusive possession and therefore, Abbott was obligated to disclose or should have known that it was obligated to disclose the defective nature of the products.

31.     Abbott failed to warn purchasers of the unreasonably dangerous characteristics associated with its Similac products, including the fact that it may cause serious gastrointestinal discomfort, diarrhea, vomiting and other health problems.

32.     Abbott owed a legal duty to Plaintiff to formulate, design, manufacture, market, advertise, distribute and sell Similac products that were safe for human consumption, and to refrain from selling them if they did not meet such standards.

33.     As described herein, Abbott breached this duty, which directly and proximately caused or resulted in Plaintiff's injury in fact, a loss of money or property, the personal expenditure of time and resources and/or other forms of injury, damage, mental anguish, and/or physical pain and suffering.

34.     As a reasonable consequence of Defendants' breach of their duties described above, including the possibility of her infant child suffering from gastrointestinal and other health related problems due to the consumption of Similac, Plaintiff and the putative Classes are entitled to the reasonable value of medical monitoring for their infant children. The reasonableness of medical monitoring is bolstered by (1) the significance and extent of the consumption of Defendants' Similac products, (2) the age of the individuals consuming Similac products, (3) the seriousness of the conditions for which the Classes' infant children are at risk, and (4) the clinical value of early detection.

35.     Abbott, in the exercise of reasonable care, should have known that the failure to exercise proper safety standards and equipment management would have led to insects infiltrating Similac products, thereby creating formulas unsafe for infant consumption. Abbott did expect or reasonably should have expected Plaintiff and the members of the putative Classes to purchase and ingest Similac products, and that the products' defective condition would adversely affect their infant children.

36.     Plaintiff and the members of the putative Classes would not have purchased the recalled Similac products had they known of their defective condition, including being contaminated with insect pieces and larvae.

**Facts Specific to Plaintiff Vavak**

37. Plaintiff is the mother of an infant child.

38. In 2010, Plaintiff was exposed to the promotion, advertising and marketing of Similac products as set forth herein and believed that such products were safe for consumption by her infant child.

39. In or about 2010, Plaintiff purchased Similac infant formula for consumption by her infant child. Plaintiff was misled into purchasing Similac products, a result of Abbott's deceptive marketing and advertising.

40. In purchasing Similac products, Plaintiff relied on the reputation of Abbott as a trusted manufacturer of infant formulas, and was misled into believing that Similac products were healthy and safe for use.

41. Plaintiff's infant child ingested the defective product identified above, and, like thousands of others, was sickened as a result.

### Class Certification Allegations

42. Plaintiff brings this Complaint on behalf of a Class and SubClass (collectively the "Classes"), defined as follows:

**The Class:** All persons in the United States who purchased Similac infant formula that is subject to Abbott's Similac recall of September 22, 2010. Excluded from the Class are 1) any Judge or Magistrate presiding over this action and members of their families; 2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current or former employees, officers and directors; 3) persons who properly execute and file a timely request for exclusion from the class; and 4) the legal representatives, successors or assigns of any such excluded persons.

**The SubClass:** All California citizens who purchased Similac infant formula that is subject to Abbott's Similac recall of September 22, 2010. Excluded from the Class are 1) any Judge or Magistrate presiding over this action and members of their families; 2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current or former employees, officers and directors; 3) persons who properly execute and file a timely request for exclusion from the class; and 4) the legal representatives, successors or assigns of any such excluded persons.

43. Plaintiff reserves the right to amend these definitions based upon information learned in discovery.

44. **Numerosity:** The exact number of the members of the Classes is unknown

-8-

CLASS ACTION COMPLAINT

1   and is not available to Plaintiff, but individual joinder is impracticable. The Defendants

2   have over one million customers who purchased their recalled Similac products. Members

3   of the Classes can likely be identified through Defendants' records.

4        45.   **Commonality:** Common questions of fact and law exist as to all members of

5   the Classes and predominate over questions affecting only individual members. With

6   respect to the Class and SubClass, these common questions include:

7        (a)   Whether Defendants were negligent in their formulation, design, manufacture,

8   distribution, marketing, and sale of Similac products as alleged herein;

9        (b)   Whether Defendants' wrongful conduct as alleged herein constitutes

10  misrepresentation;

11       (c)   Whether Defendants' wrongful conduct as alleged herein constitutes negligent

12  misrepresentation;

13       (d)   Whether Defendants have been unjustly enriched as a result of their wrongful

14  conduct alleged herein and whether under principles of equity and good conscience, they

15  should not be allowed to retain the monies charged to Plaintiff and the putative Classes for

16  the recalled Similac products;

17       (e)   Whether Defendants' wrongful conduct of selling Similac products that were

18  not fit for consumption by infant children constitutes breach of contract;

19       (f)   Whether Defendants' failure to recall or otherwise notify the Classes of the

20  defective nature of their Similac products on September 16, 2010, resulted in the destruction

21  of evidence relevant to this litigation and constitutes negligent spoliation; and,

22       (g)   Whether Plaintiff and the putative Classes are entitled to relief, and the nature

23  of such relief.

24       In addition to the questions above, common questions for the SubClass also include:

25       (a)   Whether Defendants' wrongful conduct as alleged herein constitutes

26  violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200.

27       46.   **Typicality:** Plaintiff's claims are typical of the claims of other members of

28  the Classes, as Plaintiff's and the other members of the Classes sustained damages arising

-9-

CLASS ACTION COMPLAINT

1  out of Defendants' wrongful conduct, based upon the same transactions made uniformly

2  with respect to Plaintiff and the public.  The California laws under which Plaintiff's claims

3  arise do not conflict with the laws of any other state in any material way.

4      47.    **Adequate Representation:**  Plaintiff will fairly and adequately represent and

5  protect the interests of the other members of the Classes, and has retained counsel

6  competent and experienced in complex class actions.  Neither Plaintiff nor her counsel has

7  any interest antagonistic to those of the Classes, and Defendants have no defenses unique to

8  Plaintiff.

9      48.    **Predominance and Superiority:**  This class action is appropriate for

10  certification because class proceedings are superior to all other available methods for the

11  fair and efficient adjudication of this controversy, as joinder of all members of the Classes is

12  impracticable.  The damages suffered by the individual members of the Classes will likely

13  be relatively small, especially when compared to the burden and expense of individual

14  prosecution of the complex litigation necessitated by Defendants' actions.  Accordingly, it

15  would be virtually impossible for the individual members of the Classes to obtain effective

16  relief from Defendants' misconduct.  Even if members of the Classes themselves could

17  sustain such individual litigation, it would still not be preferable to a class action, because

18  individual litigation would increase the delay and expense to all parties.  By contrast, a class

19  action presents far fewer management difficulties and provides the benefits of single

20  adjudication, economy of scale, and comprehensive supervision by a single court.

21  Economies of time, effort, and expense will be fostered and uniformity of decisions will be

22  ensured.

23      49.    **Policies Generally Applicable to the Class:**  This class action is also

24  appropriate for certification because Defendants have acted or refused to act on grounds

25  generally applicable to the Classes, thereby making final injunctive relief or corresponding

26  declaratory relief appropriate with respect to the Classes as a whole.  Defendants' practices

27  and policies challenged herein apply to and affect all members of the Classes uniformly, and

28  Plaintiff's challenge of these practices and policies hinges on Defendants' conduct, not on

1  facts or law applicable only to Plaintiff.

2  **COUNT I: Negligence**
3  **(On behalf of the Classes)**
4  50.   Plaintiff restates and incorporates the foregoing allegations as if fully set forth
5  herein.
6  51.   Abbott, as a manufacturer, distributor and seller of food products, including
7  those intended for consumption by infants, owes a duty to its customers to use reasonable
8  care in the formulation, manufacture, marketing, advertising, distribution, and sale of its
9  products to ensure that they are not adulterated, contaminated, injurious to health, or
10 otherwise unfit for human, and particularly, infant consumption.
11 52.   Defendants breached their duty as described herein by failing to exercise
12 reasonable care in the formulation, manufacture, marketing, advertising, distribution, and
13 sale of their Similac products, which according to Defendants' own statements, contained
14 insect parts and larvae.
15 53.   As a direct and proximate result of Defendants' failure to exercise reasonable
16 care in the formulation, manufacture, marketing, advertising, distribution, and sale of their
17 Similac products, Plaintiff and the members of the putative Classes suffered damages.

18 **COUNT II: Misrepresentation**
19 **(On behalf of the Classes)**
20 54.   Plaintiff restates and incorporates the foregoing allegations as if fully set forth
21 herein.
22 55.   Through their marketing materials and advertising campaigns, Defendants
23 represented to Plaintiff and the members of the putative Classes that Similac products
24 promote the health and well being of infants and are safe for ingestion by infant children.
25 56.   Those statements were false, and at the time the statements were made
26 Defendants knew or should have known of their falsity. Contrary to Defendants'
27 representations, the Similac products at issue in this Complaint contained pieces of beetles
28

1  and beetle larvae, which can cause serious health problems in infant children who consume

2  them, including, but not limited to, diarrhea, vomiting and gastrointestinal discomfort.

3      57.   Defendants intended that Plaintiff and the members of the putative Classes

4  rely on their false statements by purchasing Similac products for consumption by Class

5  members' infant children.

6      58.   Plaintiff and the members of the putative Classes justifiably relied on

7  Defendants' false statements by purchasing Similac products.

8      59.   As a direct and proximate result of Defendants' misrepresentations, Plaintiff

9  and the members of the putative Classes suffered damages.

10                COUNT III: Negligent Misrepresentation
                       (On behalf of the Classes)
11      60.   Plaintiff restates and incorporates the foregoing allegations as if fully set forth

12  herein.

13      61.   Through their marketing materials and advertising campaigns, Defendants

14  represented to Plaintiff and the members of the putative Classes that Similac products

15  promote the health and well being of infants and are safe for ingestion by infant children.

16      62.   Those statements were false, and at the time such false statements were made,

17  Defendants knew or should have known of their falsity or, at the very least, acted with

18  negligence and carelessness in ascertaining the truth of their false statements.  Contrary to

19  Defendants' representations, the Similac products at issue in this Complaint contained

20  pieces of beetles and beetle larvae, which can cause serious health problems in infant

21  children who consume them, including, but not limited to, diarrhea, vomiting and

22  gastrointestinal discomfort.

23      63.   Defendants intended that Plaintiff and the members of the putative Classes

24  rely on their false statements by purchasing Similac products for consumption by Class

25  members' infant children.

26      64.   Plaintiff and the members of the putative Classes justifiably relied on

27  Defendants' false statements by purchasing Similac products.

28

65.     As a direct and proximate result of Defendants' misrepresentations, Plaintiff and the members of the putative Classes have suffered damages.

### COUNT IV:  Breach of Express Warranty
#### (On behalf of the Classes)

66.     Plaintiff restates and incorporates the foregoing allegations as if fully set forth herein.

67.     Defendants provided Plaintiff and the members of the putative Classes with written express warranties that Similac products contained "clinically proven ingredients" that promote the health and well being of infant children and that are safe for ingestion by infants.

68.     Defendants breached these express warranties by formulating, manufacturing, marketing, advertising, distributing, and selling to Plaintiff and the members of the putative Classes Similac products containing insect parts and larvae, which can cause serious health problems in infant children who consume them, including, but not limited to, diarrhea, vomiting and gastrointestinal discomfort.

69.     Plaintiff and the other members of the putative Classes relied upon Defendants' express warranties by purchasing the defective and recalled Similac products at issue in this Complaint for consumption by their infant children.

70.     As a direct and proximate cause of Defendants' breach of these express warranties, Plaintiff and the other members of the putative Classes have suffered damages.

### COUNT V:  Breach of Implied Warranty of Merchantability
#### (On behalf of the Classes)

71.     Plaintiff restates and incorporates the foregoing allegations as if fully set forth herein.

72.     Through their marketing materials and advertising campaigns, Defendants represented to Plaintiff and the putative Classes that Similac products promote the health and well being of infant children and are safe for consumption by infant children.

-13-
CLASS ACTION COMPLAINT

73.    As is evident from their marketing, advertising, promotion, packaging, labeling, distribution and sale of Similac products, Defendants knew or should have known the specific use for which the Plaintiff and the putative Classes purchased Similac products.

74.    Plaintiff and the members of the putative Classes justifiably relied on Defendants' marketing, advertising, and promotion of Similac products by purchasing Similac products for consumption by their infant children.

75.    Defendants formulated, manufactured, marketed, advertised, distributed, and sold Similac products containing insect parts and larvae, which can cause serious health problems in infant children, including, but not limited to, diarrhea, vomiting and gastrointestinal discomfort.

76.    Through their wrongful conduct as alleged herein, Defendants breached the implied warranty of merchantability.  Plaintiff and members of the putative Classes purchased, but did not receive, Similac products that were safe for consumption by infants and thus the goods were not fit for the purposes of which such goods are used, or as promoted, advertised, marketed, packaged, labeled, distributed, and sold by Defendants.

77.    As a direct and proximate cause of Defendants' breach of the implied warranties, Plaintiff and the members of the putative Classes have suffered damages.

### COUNT VI:  Breach of Contract
### (On behalf of the Classes)

78.    Plaintiff restates and incorporates the foregoing allegations as if fully set forth herein.

79.    Plaintiff and the members of the putative Classes entered into valid and enforceable contracts with Defendants for the purchase of Similac products, which Defendants represented would promote the health and well being of infant children and were safe for human consumption.

80.    Pursuant to those contracts, Defendants were obligated to provide to Plaintiff and the members of the putative Classes, Similac products that promote the health and well being of infant children and were safe for human consumption.

Pactal & Hawxon LLP
16133 Valleyheart Drive
SHERMAN OAKS, CA 91403
(800) 590-1399