1  BRIAN J. MOONEY (SBN: 143795)
   bmooney@gordonrees.com
2  EDWARD FITZGERALD (SBN: 227218)
   efitzgerald@gordonrees.com
3  GORDON & REES LLP
   275 Battery Street, Suite 2000
4  San Francisco, CA  94111
   Telephone:  (415) 986-5900
5  Facsimile:  (415) 986-8054

6  Attorneys for Defendants
   ABBOTT LABORATORIES, INC. and
7  ABBOTT LABORATORIES

8

## UNITED STATES DISTRICT COURT

9

## CENTRAL DISTRICT OF CALIFORNIA

10

11  SHIMRIT VAVAK, individually and on )   Case No.  8:10-cv-01995-JVS (RZ)
    behalf of all others similarly situated, )
12                                          )
                                            )   **DEFENDANTS' MEMORANDUM**
13               Plaintiff,                 )   **OF LAW IN OPPOSITION TO**
                                            )   **PLAINTIFF'S MOTION TO**
14          v.                              )   **REMAND**
                                            )
15  ABBOTT LABORATORIES, INC. d/b/a )   Date: February 28, 2011
    ABBOTT SALES, MARKETING and )   Time: 1:30 p.m.
16  DISTRIBUTION CO., a Delaware )   Judge: Hon. James Selna
    corporation, and ABBOTT )
17  LABORATORIES d/b/a ABBOTT )   **Accompanying Documents:**
    NUTRITION, an Illinois corporation, )   Declaration of Edward R. Fitzgerald
18                                          )
                                            )
19               Defendants.                )

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page No.

PRELIMINARY STATEMENT ...................................................................... 1

BACKGROUND ............................................................................................. 2

I.    Introduction ......................................................................................... 2

II.   The Kiely Action And The Statements Of Abbott's Counsel Therein ........... 2

III.  The Instant Action ............................................................................... 4

ARGUMENT .................................................................................................. 5

I.    Judicial Estoppel Does Not Apply Here ................................................. 5

      A.    Judicial Estoppel Is Never Applicable In Determinations Of
            Subject-Matter Jurisdiction ........................................................ 5

      B.    The Test For Judicial Estoppel Is Not Met Here ......................... 7

            1.    Abbott's Position In This Case Is Not Clearly
                  Inconsistent With Its Position In Kiely .............................. 8

            2.    The Remarks Of Abbott's Counsel Did Not Persuade The
                  Kiely Court ..................................................................... 10

      C.    There Is No Prejudice Or Unfairness To Vavak ........................ 12

      D.    There Is No Evidence Of Bad Faith ......................................... 13

II.   Abbott Has Met, And Far Exceeded, Its Burden Of Proof .................... 14

      A.    Legal Standard For Removal ................................................... 14

      B.    Over $5 Million Is Indisputably In Controversy ....................... 15

CONCLUSION ............................................................................................. 18

# TABLE OF AUTHORITIES

Page No.

## Cases

*Abrego v. Dow Chem. Co.*
  443 F.3d 676 (9th Cir. 2006)...................................................................14, 15, 16, 18

*Allen v. R & H Oil & Gas Co.*
  63 F.3d 1326 (5th Cir. 1995).................................................................................15

*Am. Methyl Corp. v. EPA*
  749 F.2d 826 (D.C. Cir. 1984) ...............................................................................14

*Bonzel v. Pfizer, Inc.*
  439 F.3d 1358 (Fed. Cir. 2006)................................................................................5

*Buchner v. FDIC*
  981 F.2d 816 (5th Cir. 1993)...................................................................................6

*Carrasca v. Pomeroy*
  313 F.3d 828 (3d Cir. 2002).............................................................................8, 14

*Chaveriat v. Williams Pipe Line Co. (Posner, C.J.)*
  11 F.3d 1420  (7th Cir. 1993)................................................................................10

*Chrysler Credit Corp. v. Country Chrysler, Inc.*
  928 F.2d 1509 (10th Cir. 1991)...............................................................................6

*Colo. River Water Conservation Dist. v. United States*
  424 U.S. 800 (1976) ...............................................................................................5

*Da Silva v. Kinsho Int'l Corp.*
  229 F.3d 358 (2d Cir. 2000)....................................................................................6

*Desjardins v. Van Buren Cmty. Hosp.*
  37 F.3d 21 (1st Cir. 1994)......................................................................................14

*Gallagher v. San Diego Unified Port Dist.*
  No. 08-CV-886-IEG (RBB), 2009 WL 2781553, at *1 n.2 (S.D. Cal. Aug. 31, 2009)...................................................................................................................16

*Gaus v. Miles, Inc.*
  980 F.2d 564 (9th Cir. 1992)............................................................................15, 17

*Gen. Signal Corp. v. MCI Telecommc'ns Corp.*
  66 F.3d 1500 (9th Cir. 1995)...................................................................................8

*Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*
  523 F.3d 1304  (Fed. Cir. 2008)..............................................................................12

*In re Southwestern Bell Tel. Co.*
  535 F.2d 859 (5th Cir. 1976)...................................................................................6

-ii-

*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxides de Guinee*
456 U.S. 694 (1982) ............................................................................ 5

*Interstate Fire & Cas. Co. v. Underwriters at Lloyd's, London*
139 F.3d 1234 (9th Cir. 1998) .......................................................... 10

*Jackson Jordan, Inc. v. Plasser Am. Corp.*
747 F.2d 1567 (Fed. Cir. 1984) ........................................................ 13

*Konstantinidis*
626 F.2d at 938 ............................................................................ 10, 11

*Lowdermilk v. U.S. Bank Nat'l Ass'n*
479 F.3d 994 (9th Cir. 2007) ............................................................ 17

*New Hampshire v. Maine*
532 U.S. at 750 .......................................................................... passim

*Nichols v. Scott*
69 F.3d 1255 (5th Cir. 1995) ............................................................ 13

*Roe v. Michelin N. Am., Inc.*
613 F.3d 1058 (11th Cir. 2010) ................................................... 15, 17

*Ryan v. State Bd. of Elections*
661 F. 2d 1130 (7th Cir. 1981) ......................................................... 6, 7

*Singer v. State Farm Mut. Auto. Ins. Co.*
116 F.3d 373 (9th Cir. 1997) ......................................... 14, 15, 17, 18

*Teledyne Indus., Inc. v. NLRB*
911 F.2d 1214 (6th Cir. 1990) ............................................................ 7

*Thermtron Prods., Inc. v. Hermansdorfer*
423 U.S. 336 (1976) .......................................................................... 6

*United Mine Workers of Am. 1974 Pension v. Pittston Co.*
984 F.2d 469 (D.C. Cir. 1993) .......................................................... 14

*Whiting v. Krassner*
391 F.3d 540 (3d Cir. 2004) ............................................................... 6

*Zacharia v. Harbor Island Spa, Inc.*
684 F.2d 199 (2d Cir. 1982) .......................................................... 9, 15

*Zedner v. United States*
547 U.S. 489 (2006) ......................................................................... 11

## Statutes

28 U.S.C. section 1447 .............................................................. 1, 6, 7

## Other Authorities

18B Wright & Miller § 4477 ........................................................ passim

-iii-

2 McCormick on Evidence
    (6th ed.) section 329 ........................................................................................... 16

Georgene M. Vairo, Class Action Fairness Act of 2005:
    A Review and Preliminary Analysis 1-4 (Matthew Bender 2005) ...................... 12

DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND
Case No.  8:10-cv-01995-JVS (RZ)

1    Defendants Abbott Laboratories Inc. and Abbott Laboratories (collectively,
2    "Abbott") respectfully submit this memorandum in opposition to Plaintiff Shimrit
3    Vavak's ("Vavak") motion to remand pursuant to 28 U.S.C. § 1447(c).

4                            **PRELIMINARY STATEMENT**

5          In September 2010, Abbott recalled over five million containers of its
6    Similac infant formula.  Immediately thereafter, plaintiffs filed lawsuits against
7    Abbott in state and federal court.  One of these plaintiffs was Vavak, who filed suit
8    in California state court.  Another plaintiff, Maria Kiely ("Kiely"), filed suit in
9    federal court in the Northern District of Illinois.

10         The day after Kiely filed her complaint, the judge in that case issued an
11   order *sua sponte* questioning the existence of federal jurisdiction based on the facts
12   as pleaded by Kiely.  At a subsequent hearing, the judge made plain that he
13   believed jurisdiction was lacking.  Counsel for Abbott was present and made
14   several remarks about the lack of merit to Kiely's allegations and the unlikeliness
15   of class certification.  These remarks had nothing to do with the existence of
16   federal jurisdiction.  After the judge dismissed Kiely's complaint without
17   prejudice, Kiely refiled it in state court.

18         Vavak now attempts to defeat removal of *this* action based upon those
19   remarks.  This argument must be rejected.  Abbott has always maintained that the
20   cases involving the September 2010 recall may – and should – be heard in federal
21   court.  It has never moved to dismiss any such action for lack of federal
22   jurisdiction and has regularly removed state-court actions involving the recall to
23   federal court.  In short, Abbott has never taken a position inconsistent with
24   removal.  And, in any event, the remaining requirements for the invocation of
25   judicial estoppel, other than inconsistency, are absent here.

26         Vavak also argues that, as a separate matter, Abbott has not met its burden
27   of proof because the calculations in its removal notice are speculative.  However,
28   Vavak herself alleges that *over five million units* of "defective" Similac are at issue

-1-

1   in this litigation, and seeks restitution for the purchase price of *each one of them*, as

2   well as pain-and-suffering damages, medical expenses, medical monitoring, and

3   attorney's fees.  How this might total less than $5 million is a mystery.

4   Nevertheless, for the avoidance of all doubt, Abbott now submits a sworn

5   declaration establishing that the actual quantity in controversy is over *twenty times*

6   that threshold amount.

7                            **BACKGROUND**

8   **I.    Introduction**

9           On September 22, 2010, Abbott issued a recall of certain Similac-brand

10  infant formula products in cooperation with the United States Food and Drug

11  Administration ("FDA").  Since then, fifteen lawsuits have been filed against

12  Abbott based on that recall.  Nine were originally filed in federal court, and six

13  were originally filed in state court.  Of the nine actions originally filed in *federal*

14  court, one has been dismissed with prejudice for failure to prosecute, and one –

15  *Kiely v. Abbott Laboratories Inc.*, 10-cv-6694 (N.D. Ill.) (Shadur, J.) (the "*Kiely*

16  action") – was dismissed without prejudice for lack of federal jurisdiction and re-

17  filed in state court.  Of the six actions originally filed in *state* court, Abbott has

18  removed three – including this action – to federal court, and will have removed a

19  fourth by the time the Court hears this motion.  The remaining two state-court

20  actions are not putative class actions, and complete diversity of citizenship is

21  lacking; thus, removal is not an option.

22  **II.   The *Kiely* Action And The Statements Of Abbott's Counsel Therein**

23          The *Kiely* action was filed on October 18, 2010 in the Northern District of

24  Illinois.  The very next day, Judge Milton I. Shadur ("Judge Shadur"), acting *sua*

25  *sponte*, issued a Memorandum Order in which he stated that it was not evident to

26  him from the face of the pleadings "[how] the amount in controversy exceed[ed]

27  the $5 million floor necessary to invoke" the Class Action Fairness Act of 2005

28  ("CAFA"), and that "Kiely's counsel should be called upon to expand upon the

-2-

1  ipse dixit assertions in the Complaint."  **Ex. A**[1] (*Kiely* Memorandum Order) at 2.

2  Accordingly, Judge Shadur ordered Kiely's counsel to appear on October 26, 2010

3  "to address that question," and invited Defendants to "arrange for [their] counsel to

4  be present as well." *Id.* at 2-3.

5       At the hearing, Kiely's counsel argued that federal jurisdiction existed based

6  upon the facts pleaded in the complaint, including the fact that the recall involved

7  over five million tubs.  **Ex. B** (*Kiely* Hearing Transcript) at 8.  He noted that "there

8  have been numerous federal cases filed, and every other court has accepted

9  jurisdiction." *Id.* at 5-6.  He further mentioned that Abbott had filed a Form 8K

10 with the Securities Exchange Commission estimating that the recall would cost

11 Abbott $100 million. *Id.* at 6.  However, Judge Shadur refused to credit this figure

12 on the ground that "the cost to [the *defendant*] of a recall" is not necessarily the

13 same as the amount the *plaintiff class* would be entitled to recover. *Id.* at 6-7.

14      Having already made clear that he believed jurisdiction was lacking, Judge

15 Shadur then gave Abbott's counsel, John D. Winter, Esq. ("Mr. Winter"), an

16 opportunity to speak.  Mr. Winter addressed *the merits* of Kiely's claims,

17 explaining that Abbott had cooperated with FDA and "mov[ed] with all due

18 deliberate speed to understand the problem and then take an appropriate action."

19 *Id.* at 9.  He explained that the fact of a recall alone, without proof of a defect,

20 "doesn't translate into [the plaintiff class] being able to satisfy any of the

21 prerequisites for this $5 million damage claim."  Mr. Winter insisted that

22 warehouse beetles "[are] not a health hazard." *Id.*  He suggested that Kiely's

23 complaint "[was] just not going to survive the motion to dismiss which [Abbott

24 was] going to make." *Id.* at 10.  He also observed that "7th Circuit precedent . . .

25 on class certification" could stand in the way of the ultimate class-wide recovery of

26 $5 million. *Id.*

27

28 [1] All exhibits referenced herein are attached to the Declaration of Edward R.
Fitzgerald filed and served concurrently with this opposition.

-3-

1   It was *in this context* that Mr. Winter stated that "[i]t just – it does not

2   follow. It is just not plausible." *Id.* at 9. In other words, Mr. Winter was not

3   discussing the theoretical amount in controversy, but rather, the likelihood of the

4   plaintiffs' ultimate recovery. Nowhere did Mr. Winter discuss whether the

5   allegations on the face of Kiely's complaint, taken as true, placed at least $5

6   million *theoretically* in controversy.

7   Kiely's counsel then opined that "if there is a dispute about jurisdiction," his

8   "personal belief" was that a court ought to "err on the side of not finding

9   jurisdiction because the plaintiff does have [the] alternative[]" of refiling in state

10  court, and that dismissal would "not be depriving [Kiely] or the putative class of a

11  right to pursue the case." *Id.* at 11.

12  Judge Shadur then concluded:

13  I think that on the basis . . . of what we have before us
    *now*, [Kiely] really ha[s] not stated an effective case for
14  federal jurisdiction. Now, you file a corresponding
    lawsuit in the State Court system. You engage in
15  appropriate discovery. There may come a point at which
    . . . you are able to establish, oh yes, there is $5 million in
16  controversy. . . . . *I was thinking about whether Abbott
    might choose to move this one to the federal system if
17  that would emerge and that would – I suppose they could
    do that.*
18
19
20  *Id.* at 12 (emphasis added). Judge Shadur then ordered the action dismissed

21  without prejudice. *Id.* at 14. It was promptly refiled in Illinois state court.

22  **III.   The Instant Action**

23  On November 18, 2010, Vavak commenced this action in the Superior Court

24  for the State of California for the County of Orange. She alleged that Abbott

25  recalled over five million "defective" tubs of Similac infant formula. Compl. ¶¶

26  15, 18, 20, 28, 36. Vavak fed unspecified Similac products to her child, who "was

27  sickened as a result." *Id.* ¶ 41. She seeks to represent a class of "[a]ll persons in

28  the United States who purchased formula that is subject to Abbott's Similac recall

-4-

1  of September 22, 2010." *Id.* ¶ 42.

2  The Complaint, which does not state a specific amount of damages, seeks

3  the following relief:

4  - restitution of all "monies charged to Plaintiff and the Putative Classes for the

5    recalled Similac products." Compl. ¶ 45(d).

6  - the return of all "revenues [Defendants] received for the sale of defective

7    Similac products." Compl. ¶ 86.

8  - a money judgment against Abbott "for all damages caused by their conduct."

9    Compl. Prayer for Relief ¶ C.

10 - "the reasonable value of medical monitoring for [the] infant children" of

11   Vavak and the putative class. Compl. ¶ 34.

12 - attorneys' fees.  Compl. Prayer for Relief ¶ E.

13 - an injunction "to prevent [Defendants' allegedly unfair] conduct in the

14   future." Compl. ¶ 94; Prayer for Relief ¶ G.

15   On December 30, 2010, Abbott removed this action to this Court pursuant to

16 CAFA.  On January 31, 2011, Vavak filed the instant motion for remand.

17 ## ARGUMENT

18 **I.   Judicial Estoppel Does Not Apply Here**

19   **A.   Judicial Estoppel Is Never Applicable In Determinations Of**
     **Subject-Matter Jurisdiction**

20

21   As a threshold matter, "principles of estoppel do not apply" in the evaluation

22 of federal jurisdiction. *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxides de*

23 *Guinee*, 456 U.S. 694, 702 (1982).  Any other rule would run headlong into the

24 "virtually unflagging obligation of the federal courts to exercise the jurisdiction

25 given them." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800,

26 817 (1976).  Accordingly, multiple courts have expressed disapproval of the notion

27 that judicial estoppel might be used to "negate federal jurisdiction" that would

28 otherwise exist. *Bonzel v. Pfizer, Inc.*, 439 F.3d 1358, 1363 (Fed. Cir. 2006).

-5-

1    Perhaps this principle was expressed most clearly by the Fifth Circuit:

2        Whatever the scope of the doctrine [of judicial estoppel]
         may be, so far as we have been able to discover it has
3        never been employed to prevent a party from taking
         advantage of a federal forum when he otherwise meets
4        the statutory requirements of federal jurisdiction. Persons
         who meet those criteria have a statutory, and indeed a
5        constitutional, right to resort to the federal courts. A
         district court has no authority to negate that right simply
6        because such a person has [made inconsistent
         statements]. Judicial estoppel principles cannot
7        conclusively establish jurisdictional facts.

8    *In re Southwestern Bell Tel. Co.*, 535 F.2d 859, 861 (5th Cir. 1976) (footnotes

9    omitted), *rev'd on other grounds*, 430 U.S. 723 (1977). Other circuits, too, have

10   noted the existence of "an exception to the general concept of 'judicial estoppel'

11   when it comes to jurisdictional facts or positions," which "must be examined by

12   the court on its own." *Whiting v. Krassner*, 391 F.3d 540, 544 (3d Cir. 2004); *see

13   also Da Silva v. Kinsho Int'l Corp.*, 229 F.3d 358, 361 (2d Cir. 2000) (stating that

14   "[parties'] prior litigating positions do not preclude either side from asserting its

15   current position since the issue of subject matter jurisdiction is one we are required

16   to consider, even if the parties . . . have switched sides on the issue"); *Chrysler

17   Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1521 n.10 (10th Cir. 1991)

18   ("Whatever positions the parties have taken [in the past], we possess an

19   independent duty to inquire into our jurisdiction . . . .").

20       Furthermore, the federal courts "uniform[ly]" hold that when federal

21   jurisdiction exists, a case that has been removed "may not be remanded for

22   discretionary reasons not authorized by the [removal] statute." *Ryan v. State Bd. of

23   Elections*, 661 F. 2d 1130, 1133 (7th Cir. 1981) (quoting *Thermtron Prods., Inc. v.

24   Hermansdorfer*, 423 U.S. 336, 345 n.9 (1976)); *accord Buchner v. FDIC*, 981 F.2d

25   816, 820 (5th Cir. 1993). In *Ryan*, for example, the Seventh Circuit held that the

26   doctrine of abstention, a "judicially-created doctrine" whose "application is

27   discretionary" and is not "specified in section 1447(c)," was an improper basis for

28

-6-

1   remand.  661 F.2d at 1134.  Judicial estoppel is also a judicially-created doctrine

2   "invoked by a court at its discretion" that does not appear in section 1447(c).  *New*

3   *Hampshire*, 532 U.S. at 750.  Accordingly, because the requirements for federal

4   jurisdiction are satisfied, *see infra* at 14-18, this Court may not remand merely

5   because Abbott allegedly took a different position in another case.

6   ## B.   The Test For Judicial Estoppel Is Not Met Here

7   In *New Hampshire v. Maine*, the Supreme Court noted that "several factors

8   typically inform the decision whether to apply [judicial estoppel] in a particular

9   case."  532 U.S. at 750.  First, the Court noted that "a party's later position must be

10  clearly inconsistent with its earlier position."  *Id.* (internal quotation marks and

11  citations omitted).  Second, "courts regularly inquire whether the party has

12  succeeded in persuading a court to accept that party's earlier position, so that

13  judicial acceptance of an inconsistent position in a later proceeding would create

14  the perception that either the first or the second court was misled."  *Id.* (internal

15  quotation marks and citations omitted).  Third, courts will consider "whether the

16  party seeking to assert an inconsistent position would derive an unfair advantage or

17  impose an unfair detriment on the opposing party if not estopped."  *Id.* at 751.

18  It bears repeating that judicial estoppel is "an equitable doctrine invoked by

19  a court at its discretion."  *Id.* at 750.  This discretion must be exercised "with

20  caution to avoid impinging on the truth-seeking function of the court."  *Teledyne*

21  *Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir. 1990); *see also* 18B Wright &

22  Miller § 4477 (stating that "[d]oubts about inconsistency" should be "resolved by

23  assuming there is no[ne]").

24  Contrary to Vavak's conclusory assertions, this case satisfies *none* of the

25  prerequisites for the application of judicial estoppel.  Therefore, even if judicial

26  estoppel were permissible as to jurisdictional issues, this Court has no grounds to

27  exercise its discretion.

28

1

### 1.   Abbott's Position In This Case Is Not Clearly Inconsistent With Its Position In *Kiely*

2

3   Judicial estoppel applies only when a party's later-adopted position is

4   "*clearly* inconsistent" with its earlier position. *New Hampshire*, 532 U.S. at 750

5   (emphasis added); *see also Carrasca v. Pomeroy*, 313 F.3d 828, 835 (3d Cir. 2002)

6   ("[J]udicial estoppel can be imposed only if . . . the party . . . is asserting a position

7   that is *irreconcilably* inconsistent with one he or she asserted [previously] . . . .").

8   In other words, "judicial estoppel is reserved for more egregious conduct than just

9   threshold inconsistency." *Gen. Signal Corp. v. MCI Telecommc'ns Corp.*, 66 F.3d

10   1500, 1505 (9th Cir. 1995) (internal quotation marks omitted).

In its removal notice in this action, Abbott argued that "[a]lthough

11   Defendants dispute liability and damages, Vavak's claims for relief on behalf of

12   herself and her proposed classes, *if granted*, would exceed $5 million." Removal

13   Notice ¶ 33 (emphasis added). This statement is not inconsistent – let alone

14   "clearly," "irreconcilably," or "egregious[ly]" inconsistent – with Mr. Winter's

15   comments at the *Kiely* hearing. Plaintiffs take Mr. Winter's remarks out of

16   context, asserting that "[Abbott's] position in the *Kiely* matter [was] that it 'just is

17   not plausible' that there is more than $5 million at issue in *these cases*." Mot. to

18   Remand at 5-6 (emphasis added). In fact, at no time did Mr. Winter make any

19   statement about any case other than the *Kiely* action. Moreover, Mr. Winter never

20   took any position regarding whether "more than $5 million" was *theoretically* at

21   issue based solely on the face of the *Kiely* complaint.

Rather, as noted above, Mr. Winter opined that Kiely's claims lacked merit

22   because Abbott had cooperated with FDA and "mov[ed] with all due deliberate

23   speed to . . . take . . . appropriate action." **Ex. B** at 9. He explained that warehouse

24   beetles were "not a health hazard" and that putative class members would not "be[]

25   able to satisfy any of the prerequisites for this $5 million damage claim" because

26   they would be unable to prove injury. *Id.* He predicted that Kiely's complaint

27

28

-8-

"[was] just not going to survive [Abbott's planned] motion to dismiss," and observed that "7th Circuit precedent . . . on class certification" could thwart recovery. *Id.* at 10. Each of these considerations goes to *the merits* of Kiely's claim, or to the *eventual likelihood* of recovery. But those considerations are not relevant in determining that the amount in controversy in this case exceeds $5 million, which is Abbott's position. *See Zacharia v. Harbor Island Spa, Inc.*, 684 F.2d 199, 202 (2d Cir. 1982) ("The jurisdictional determination is to be made on the basis of the plaintiff's allegations, not [the court's assessment of] the merits"). Accordingly, none of Mr. Winter's statements in the *Kiely* proceeding is in any way "inconsistent" – let alone "clearly" so – with Abbott's position that CAFA's amount-in-controversy requirement is met in this case.[2]

Furthermore, even assuming *arguendo* that Mr. Winter had stood before Judge Shadur and clearly opined that the allegations on the face of Kiely's complaint did not even *theoretically* place more than $5 million in controversy, such a position would *still* not be "clearly inconsistent" with the position Abbott advances here. First of all, Vavak makes no effort to show that the allegations on the face of her Complaint and those on the face of Kiely's are exactly the same, such that Abbott could not consistently oppose jurisdiction in one action while asserting it in the other.

But even assuming the two complaints were identical, Abbott seeks removal here based not just on Vavak's Complaint, but also on the basis of Abbott's subsequently-arising knowledge, as reflected in the Declaration of Jeff Barton. *See infra* at 18. In other words, even if Abbott were estopped from arguing that the face of Vavak's Complaint *alone* puts more than $5 million in controversy, Abbott now argues that Vavak's Complaint, *in conjunction with* knowledge gained since

---

[2] Vavak may respond that Mr. Winter's comments on the merits of Kiely's claims were not relevant in the *Kiely* proceeding either. However, this does not establish that Abbott's position is *inconsistent* with Mr. Winter's comments.

-9-

the *Kiely* hearing, establishes the requisite amount in controversy.  This is a different argument.  Indeed, courts regularly recognize that "later events [may] establish good-faith reasons for [an apparent] change" in position, therefore precluding the application of judicial estoppel.  18B Wright & Miller § 4477 (noting that "[c]ourts have accepted justifications that involve the acquisition of new information, . . . a better understanding of unchanged facts, [or] changes in context that give old facts a new importance"); *see also Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1428 (7th Cir. 1993) (Posner, C.J.) (stating that a party may change position "on the basis of new information, even if inconsistent old information had gotten the party an advantage in some other proceeding").[3]

## 2.  The Remarks Of Abbott's Counsel Did Not Persuade The *Kiely* Court

Judicial estoppel will only apply when "[a] party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." *New Hampshire*, 532 U.S. at 750; *see also Interstate Fire & Cas. Co. v. Underwriters at Lloyd's, London*, 139 F.3d 1234, 1239 (9th Cir. 1998) (noting that "judicial estoppel [applies] only if the court has *relied* on the party's previously inconsistent statement" (emphasis added)); *Konstantinidis*, 626 F.2d at 938 (stating that the doctrine's rationale is that "a party should not be allowed *to convince unconscionably* one judicial body to adopt factual contentions" and then later argue the opposite (emphasis added)).  Because its application depends on whether a party "persuaded" or "convinced" a court to "rely" on the now-abandoned position, "judicial estoppel should not be applied if

---

[3] In fact, Judge Shadur himself recognized at the *Kiely* hearing that after "appropriate discovery" in a state-court action, "[t]here may come a point at which . . . you are able to establish" that "there is $5 million in controversy," and that "Abbott might choose to [remove that action] to the federal system if that would emerge . . . ."  **Ex. B** at 12.

-10-

1   no judicial body has been led astray," *Konstantinidis*, 626 F.2d at 939, as is the

2   case where "it was the court, not the party, that instigated the first position that the

3   party later chose to abandon." 18B Wright & Miller § 4477.

4   　　　　Here, despite Vavak's suggestion to the contrary, Mr. Winter did not

5   "persuade" or "convince" Judge Shadur to "rely" on anything. For starters, Judge

6   Shadur ordered the parties into court *sua sponte*, stating that he doubted the

7   existence of jurisdiction based on "the ipse dixit assertions in [Kiely's]

8   Complaint." **Ex. A** at 2. Accordingly, "it was the court, not the party, that

9   instigated the first position that [Vavak alleges Abbott] later chose to abandon."

10  18B Wright & Miller § 4477; *see, e.g.*, *Zedner v. United States*, 547 U.S. 489, 505

11  (2006) ("Petitioner did not 'succee[d] in persuading' the District Court to accept

12  the proposition [he now challenges] that prospective waivers of Speedy Trial Act

13  rights are valid. On the contrary, it was the District Court that requested the waiver

14  and produced the form for petitioner to sign.").

15  　　　　Subsequently, at the October 26 hearing, Kiely's counsel presented

16  argument, and Judge Shadur was not convinced. *See* **Ex. B** at 7-8. Mr. Winter

17  then made the remarks with which Vavak presently takes issue. Judge Shadur then

18  told Kiely's counsel that he still "ha[dn't] heard anything" that convinced him that

19  jurisdiction existed. *Id.* at 11. Kiely's counsel then *agreed* to dismissal, noting

20  that *his "personal belief"* was that Judge Shadur should "err on the side of not

21  finding jurisdiction." *Id.* (emphasis added). He did, however, take issue with Mr.

22  Winter's remarks, insisting that "whether we can get class classification [sic] or . . .

23  survive a motion to dismiss [does not] bear[] on whether the Court has

24  jurisdiction." *Id.* at 13. Judge Shadur apparently agreed, responding, "Right." *Id.*

25  　　　　Given this sequence of events, it is inconceivable how Vavak can assert that

26  Judge Shadur "*accepted Abbott's contentions* and *at [Abbott's] urging*, dismissed

27  [the *Kiely*] case." Mot. to Remand at 8 (emphasis added). Judge Shadur clearly

28  believed that jurisdiction was lacking from the time he first issued his *sua sponte*

-11-

1   order, at which juncture Abbott had yet to make an appearance.  Throughout the

2   October 26 hearing – both before and after Mr. Winter spoke – Judge Shadur made

3   plain that he believed Kiely's allegations were insufficient.  When confronted with

4   Judge Shadur's skepticism, Kiely's counsel *agreed* that it is best to "err on the side

5   of not finding jurisdiction" and asked that his case be dismissed.  Thus, Mr.

6   Winter's comments did not "persuade" or "convince" Judge Shadur to adopt any

7   position.  *See Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*, 523 F.3d 1304,

8   1315 (Fed. Cir. 2008) (holding that judicial estoppel does not apply where "the

9   record does not link [the party's prior] success . . . to its [allegedly inconsistent]

10  argument" asserted in that proceeding).

11              **C.     There Is No Prejudice Or Unfairness To Vavak**

12              The *New Hampshire* Court's third factor was "whether the party seeking to

13  assert an inconsistent position would derive an unfair advantage or impose an

14  unfair detriment on the opposing party if not estopped."  532 U.S. at 750.  Vavak

15  makes the conclusory allegation that "allowing Abbott to thwart CAFA jurisdiction

16  in one case, only to assert it in another[,] will unfairly prejudice [her] . . . ."  Mot.

17  to Remand at 8.[4]  However, the only supposed "prejudice" which she identifies is

18  that the "presumption in favor of [her] choice of forum" would be defeated.  *Id.*

19              Of course, this is the precisely what happens *any time* a defendant removes a

20  case from state court to federal court, and such routine "prejudice" is obviously

21  countenanced by the removal statute.  The relevant question, then, is whether

22  Vavak is prejudiced by removal in some unique way *as a result of Abbott's alleged*

23  *change of position* – i.e., whether removal under the present circumstances

24  prejudices her more than removal would have prejudiced her if the *Kiely* action

---

[4] Vavak does not even hint at any "unfair advantage" Abbott might have derived as
a result of the transfer of *Kiely* from federal court to state court.  In fact, it is well
known that corporations generally prefer to *avoid* defending class actions in state
court.  *See* Georgene M. Vairo, Class Action Fairness Act of 2005: A Review and
Preliminary Analysis 1-4 (Matthew Bender 2005).

-12-

1   still remained pending in the Northern District of Illinois.  Unsurprisingly, Vavak

2   makes no attempt to explain how this might be so.

3        The story might be different if Vavak had been a party to the prior

4   proceeding and had actually been affected by Abbott's supposed representations

5   there.  *Cf. New Hampshire*, 532 U.S. at 755 (applying judicial estoppel against

6   New Hampshire where, "[h]aving convinced th[e] Court [in a prior litigation with

7   Maine] to accept [its] interpretation of [a decree], . . . New Hampshire now urges

8   an inconsistent interpretation *to gain an additional advantage at Maine's expense*"

9   (emphasis added)).  In fact, there is "considerable authority that judicial estoppel

10  does not apply in favor of one who was not a party to the prior proceeding in which

11  the inconsistent position was taken," *Nichols v. Scott*, 69 F.3d 1255, 1272 n.33 (5th

12  Cir. 1995), because a stranger to the first action "has not born[e] the burden of the

13  first litigation or the judgment, and as compared to a former party has a less

14  compelling claim to protection," 18B Wright & Miller § 4477; *see also Jackson*

15  *Jordan, Inc. v. Plasser Am. Corp.*, 747 F.2d 1567, 1579 (Fed. Cir. 1984) ("No case

16  is cited where the doctrine was applied in favor of a total stranger to the first

17  [proceeding] . . . .").

18       However, even if nonparty invocation of judicial estoppel is available in

19  theory, Vavak "has asserted no personal reliance on the [*Kiely*] decision or

20  prejudice to [her] litigation of the issues by reason of the [*Kiely*] decision" – as

21  opposed to her asserted "prejudice" by reason of the removal statute.  *Jackson*

22  *Jordan*, 747 F.2d at 1580.  Accordingly, preclusion is inappropriate here.

23       **D.**    **There Is No Evidence Of Bad Faith**

24       The *New Hampshire* Court recognized that "[a]dditional considerations may

25  inform the doctrine's application in specific factual contexts."  532 U.S. at 751.

26  For example, many courts have refused to apply judicial estoppel absent "[any]

27  indication that [the party sought to be estopped] ha[s] deliberately set out to

28  manipulate the system . . . ."  *United Mine Workers of Am. 1974 Pension v.*

-13-

*Pittston Co.*, 984 F.2d 469, 477 (D.C. Cir. 1993); *see also Carrasca*, 313 F.3d at 835 (stating that "judicial estoppel can be imposed only if . . . the party changed his or her position in bad faith, i.e., in a culpable manner threatening to the court's authority or integrity"); *Desjardins v. Van Buren Cmty. Hosp.*, 37 F.3d 21, 23 (1st Cir. 1994) (refusing to apply doctrine where "there [was] no indication of deliberate dishonesty"); *Am. Methyl Corp. v. EPA*, 749 F.2d 826, 833 n.44 (D.C. Cir. 1984) (noting that the doctrine is "limit[ed] to cases in which a party . . . proceeds in a calculated manner to manipulate [the] second court" and refusing to apply it where "deliberate manipulation [was not] evident on th[e] record").

As the First Circuit noted in *Desjardins*, "[t]here are many situations, especially at the outset of litigation, where a party is free to assert a position from which it later withdraws . . . ." 37 F.3d at 23.  Mr. Winter's statements were made eight days after the *Kiely* complaint was filed, and barely a month after the recall was announced.  This was the very first court appearance made by Abbott in any case pertaining to the recall.  It is fair to infer that Abbott and its counsel were still becoming acquainted with the full extent of the costs involved.  In this context, there can be no inference that Abbott's change in position – if it changed positions at all – was deliberately manipulative or in bad faith.  *See* 18B Wright & Miller § 4477 (noting that "the acquisition of new information" or "a better understanding of unchanged facts" can "establish good-faith reasons" for a change in position).

## II.    Abbott Has Met, And Far Exceeded, Its Burden Of Proof

### A.    Legal Standard For Removal

When, as here, the complaint does not demand a dollar amount, "the removing defendant bears the burden of proving by a preponderance of the evidence" that the requisite amount – here, an amount above $5 million class-wide – is in controversy.  *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997); *see also Abrego v. Dow Chem. Co.*, 443 F.3d 676, 686 (9th Cir. 2006) (holding that CAFA did not shift this burden to the plaintiff).  "Under this

-14-

1    burden, the defendant must provide evidence that it is 'more likely than not' that
2    the amount in controversy satisfies the . . . jurisdictional amount requirement."
3    *Abrego*, 443 F.3d at 683 (citation omitted).

4         Importantly, "[t]he jurisdictional determination is to be made on the basis of
5    the plaintiff's allegations, not on [the court's assessment of] the merits." *Zacharia*,
6    684 F.2d at 202. In other words, "even where [the plaintiff's] allegations leave
7    grave doubt about the likelihood of a recovery of the requisite amount,"
8    jurisdiction exists as long as that amount is *theoretically* in controversy. *Id.*; *see*
9    *also Singer*, 116 F.3d at 375 (stating that "the fact that the complaint discloses . . .
10   a valid defense to the claim" does not defeat jurisdiction).

11        In determining whether the defendant has met its burden, "[a] district court
12   may consider whether it is 'facially apparent' from the complaint that the
13   jurisdictional amount is in controversy," or may look to "'summary-judgment-type
14   evidence relevant to the amount of controversy . . . .'" *Singer*, 116 F.3d at 377
15   (quoting *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335-36 (5th Cir. 1995)).
16   While a defendant cannot meet this burden by "offer[ing] 'no facts whatsoever'"
17   and relying entirely on "conclusory allegations," *id.* (quoting *Gaus v. Miles, Inc.*,
18   980 F.2d 564, 567 (9th Cir. 1992)), a district court may "make reasonable
19   deductions, reasonable inferences, or other reasonable extrapolations" from the
20   pleadings or the facts offered by the defendant to determine whether a case is
21   removable, *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010).

22        **B.    Over $5 Million Is Indisputably In Controversy**

23        Vavak maintains that Abbott's Notice of Removal depends on "little more
24   than speculative calculation based upon self-serving assumptions." Mot. to
25   Remand at 7. Abbott does not contest that its calculations regarding pain-and-
26   suffering damages, medical monitoring, injunctive relief, and attorney's fees,
27   standing on their own, may not support removal. However, Vavak glosses over
28   Abbott's discussion of Vavak's requested *restitutionary* relief, which was the

1 │ linchpin of Abbott's amount-in-controversy argument in its Notice of Removal.
2 │ *See* Notice of Removal ¶ 39 ("CAFA's aggregate amount-in-controversy
3 │ requirement is met without even considering any of Vavak's requested relief other
4 │ than restitution.").

5 │ As Abbott already noted, Vavak's Complaint seeks restitution of *all* "monies
6 │ charged to [her] and the Putative Classes for the recalled Similac products."
7 │ Notice of Removal ¶ 35 (quoting Compl. ¶ 45(d)). Her Complaint also pleads that
8 │ over five million units of Similac were recalled. *Id.* ¶ 36 (quoting Compl. ¶ 20).[5]
9 │ Accordingly, CAFA's amount-in-controversy requirement is met, without
10 │ considering *any* of Vavak's other requested relief, so long as the average retail
11 │ price of each of those five million units was more than one dollar.

12 │ The approximate retail price of everyday goods sold in grocery stores
13 │ nationwide is a subject "within the public's common knowledge" of which this
14 │ Court may take judicial notice. *Gallagher v. San Diego Unified Port Dist.*, No. 08-
15 │ CV-886-IEG (RBB), 2009 WL 2781553, at *1 n.2 (S.D. Cal. Aug. 31, 2009); *see*
16 │ *also* 2 McCormick on Evidence (6th ed.) § 329 (stating that "[t]he oldest and
17 │ plainest ground for judicial notice" is that a fact is "commonly known in the
18 │ community"). In the present day, when a single-serving bottle of water regularly
19 │ costs over a dollar, there is no question that the average price of the recalled
20 │ powdered formula products listed in Exhibit A to the Complaint – which range
21 │ between 8 and 36 dry ounces, and which were allegedly advertised as containing
22 │ "clinically proven ingredients," Compl. ¶ 67 – was "more likely than not" over a
23 │ dollar. *Abrego*, 443 F.3d at 683.

24 │ Vavak asserts that this is mere speculation, citing the inapposite cases of

25 │ ─────────────────────
26 │ [5] Vavak bizarrely faults *Abbott* for failing to "present . . . records of the actual
    │ number of tubs of Similac formula affected by the recall." Mot. to Remand at 9.
27 │ However, the 5 million figure is taken directly from Vavak's own Complaint, on
    │ which Abbott, the removing defendant, is entitled to rely. Nevertheless, Abbott
28 │ provides such evidence now. *See* **Ex. C** (Decl. of Jeff Barton) ¶ 6.

-16-

1   *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994 (9th Cir. 2007) and *Gaus v.*

2   *Miles, Inc.*, 980 F.2d 564, 567 (9th Cir. 1992).  Mot. to Remand at 7-8.  In

3   *Lowdermilk*, the defendant calculated the potential damages at issue – there, unpaid

4   wages to terminated hourly employees – by multiplying "the estimated class size

5   (7,571) and number of days of late payment (30) by Oregon's current minimum

6   wage . . . and the typical 8-hour work day." 479 F.3d at 994.  However, the

7   defendant used as its estimated class size the *total* number of terminated employees

8   for the period at issue, rather than the number of terminated *hourly* employees, and

9   it offered no explanation whatsoever for its assumption that each class member's

10  wages were precisely 30 days late.  *Id.* at 1001.  In this context, the Ninth Circuit

11  justifiably held that "we cannot base our jurisdiction on Defendant's speculation

12  and conjecture."  *Id.* at 1002.  In *Gaus*, the defendant made the bare allegation in

13  his removal notice that the jurisdictional threshold was met, and "offered no facts

14  whatsoever" in support of that "magical incantation" – not even, it appears, "any

15  specific factual allegations or provisions in the complaint which might support that

16  proposition."  980 F.2d at 567 (citation omitted).[6]

17      Here, by contrast, the explicit statements in Vavak's Complaint get the Court

18  virtually all the way to the $5 million threshold by alleging that 5 million units

19  were recalled and by seeking restitution of the purchase price of each of them.  To

20  conclude in *this* context that it is more likely than not that more than $5 million is

21  at issue would not require the type of arbitrary "speculation and conjecture"

22  disapproved in *Lowdermilk*, or blind acceptance of the defendant's "magical

23  incantation" of a dollar amount, as in *Gaus*.  Rather, it would take only a single

24  "reasonable deduction[], . . . inference[], or . . . extrapolation[]" from the

25  pleadings, which this Court is permitted to make.  *Roe*, 613 F.3d at 1061.

26      While removability is therefore "'facially apparent' from the Complaint,"

27  _____

28  [6] Vavak also cites *Singer v. State Farm Mutual Auto Insurance Co.*, 116 F.3d 373
    (9th Cir. 1997), but in that case, the court *upheld* the removal at issue.

-17-

the Court may also consider "'summary-judgment-type evidence relevant to the amount of controversy.'" *Singer*, 116 F.3d at 377. In that vein, Vavak fails to note the Web site to which Abbott directed the Court in its Notice of Removal, which shows over 100 Similac-brand products available from prominent retailers such as Walgreens, K-Mart, and Wal-Mart, ranging in price from $4.99 to $190.47 – with no product priced at a dollar or below.

Finally, for the avoidance of all doubt, Abbott submits as **Exhibit C** to this memorandum the Declaration of Jeff Barton, the Division Vice President and Controller, Finance, of Abbott Nutrition's Products Division. This Declaration confirms that approximately five million containers of Similac were recalled, *see* Barton Decl. ¶ 6; that Abbott has already received more than 100,000 refund claims totaling $5,911,391, *id.* ¶¶ 8-9; and that the purchase prices for the recalled products ranged from $3.00 to $29.99, with an average price of $20.13, *id.* ¶ 10. Multiplying the average price of $20.13 by the (more than) 5 million units that were recalled yields a total amount in controversy of $100,650,000 – over *twenty times* CAFA's threshold. Accordingly, Vavak may no longer deny in good faith that it is "more likely than not" that an amount greater than $5 million is in controversy. *Abrego*, 443 F.3d at 683.

### CONCLUSION

For the reasons set forth above, Abbott respectfully requests that this Court deny Vavak's motion to remand this action to state court.

Dated: February 7, 2011          GORDON & REES LLP


                                 By: /s/ Edward R. Fitzgerald
                                     BRIAN J. MOONEY
                                     EDWARD FITZGERALD
                                     Attorneys for Defendant
                                     ABBOTT LABORATORIES INC.

-18-